IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALEXANDRO KRIMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:25-cv-2266-E-BN |
| | § | |
| OFFICE DEPOT LLC and VEYER | § | |
| LLC, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This lawsuit was referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Ada Brown. *See* Dkt. No. 4.

Defendants Office Depot LLC and Veyer LLC have filed a partial motion to dismiss Plaintiff Alexandro Kriman's claims under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 20.

Kriman has since filed several motions to amend or supplement his complaint. *See* Dkt. Nos. 23, 24, 29, & 36.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant in part and dismiss in part the motion to dismiss [Dkt. No. 20] and deny the motions for leave [Dkt. Nos. 23, 24, 29, & 36].

**Background**

Kriman filed this lawsuit against Defendants in state court on February 17,

2025. *See* Dkt. No. 1 at 1. He filed his First Amended Original Petition on May 20, 2025 and served it to Defendants on August 4 and August 7, 2025. *See id.* And Defendants removed the lawsuit on August 22, 2025. *See id.*

Kriman filed a 202-page amended complaint on September 18, 2025 (the "Complaint"). *See* Dkt. No. 15.

On October 2, 2025, Defendants moved to partially dismiss the Complaint. *See* Dkt. No. 20.

Kriman then filed several motions seeking leave to amend, supplement, or otherwise modify the Complaint. These are:

- Notice of Filing Supplement to Amended Petition [Dkt. No. 23] (filed as a motion on October 7, 2025);

- Amended Motion for Leave to File Supplement to Amended Petition [Dkt. No. 24] (filed October 9, 2025); and

- Motion for Leave to File Supplemental Clarification Regarding the Amended Petition and Supplement [Dkt. No. 29] (filed October 31, 2025).

The Court ordered Kriman to file one consolidated motion for leave to amend his Complaint and ordered briefing on the motion. *See* Dkt. No. 35.

Kriman then filed a Motion for Leave to File Amended Complaint [Dkt. No. 36] on November 21, 2025.

On April 15, 2026, on the parties' joint motion, the Court amended the scheduling order. *See* Dkt. No. 42. The deadline to amend pleadings had already expired on October 31, 2025. *See* Dkt. No. 27.

## Legal Standards

Considering a motion under Rule 12(b)(6), the Court "accepts all well-pleaded

facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a motion is "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see, e.g.*,

*Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (Where "a complaint reveals random puffs of smoke but nothing resembling real signs of fire, the plausibility standard is not satisfied.").

And, while Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, it does require that a plaintiff allege more than labels and conclusions, and, so, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

And, so, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d

890, 900 (5th Cir. 2019) (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 722, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rul of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen an allegation is contradicted by the contents of an exhibit attached to the pleading," "the exhibit and not the allegation controls." *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (cleaned up; quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

"*Pro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient.'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)). And

"liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

"To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff' and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

That said, Federal Rule of Civil Procedure 15 requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2). And, because this rule provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981).

One reason is futility: "If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir. 2023) (quoting *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022)). The futility analysis "mimics that of a motion to dismiss" under Rule 12(b)(6). *Id.*

Analysis

## I.     <u>Defendants' Motion to Dismiss</u>

Defendants have moved to dismiss nine of Kriman's causes of action. *See* Dkt. No. 20.

At the outset, the undersigned notes that Kriman need not provide a legal theory for the claims he alleges. *See Johnson*, 574 U.S. at 12 ("Having informed [a defendant] of the factual basis for their complaint, [a plaintiff is] required to do no more to stave off threshold dismissal for want of an adequate statement of their claim," so a plaintiff need not "set out a legal theory for the plaintiff's claim for relief." (cleaned up)).

So the undersigned will not recommend dismissal to the extent that the facts alleged do not support liability under one cause of action but better fit another.

The undersigned also disagrees with Defendants' contention that "Plaintiff's "188-page PowerPoint does not assist him, as this is simply what Plaintiff believes to be 'evidence' of his claims." Dkt. No. 21 at 14. The exhibits provided by Kriman are attached to – not merely referenced in – the Complaint. *See* Dkt. No. 15 at 15-116; Dkt. No. 15-1. As set out above, an attachment to a complaint generally becomes part of the complaint for purposes of a motion to dismiss. *See Gill*, 941 F.3d at 511. And, so, the undersigned will consider the attachments.

### A. Discrimination

Kriman raises discrimination claims – listed as cause "A" – under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), and

- 7 -

Chapter 21 of the Texas Labor Code. *See* Dkt. No. 15 at 9. Defendants move to dismiss all of these claims. *See* Dkt. No. 21 at 12.

1. Disability

Insofar as Kriman attempts to allege a discrimination claim under the ADA or Chapter 21, the undersigned finds that he fails to do so.

To bring a claim under the ADA or Chapter 21, a plaintiff must, first and foremost, provide facts to support "that he has a disability." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021) (quoting *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)); *accord Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 444-45 (5th Cir. 2018).

Kriman's 202-page Complaint is devoid of any allegation of a disability. He makes one reference to a "health condition" and a request for accommodations under the Family Medical Leave Act. Dkt. No. 15 at 7-8.

> [But t]he [ADA] is not a general protection of medically afflicted persons. It protects people who are discriminated against by their employer ... either because they are in fact disabled or because their employer mistakenly believes them to be disabled. If the employer discriminates against them on account of their being (or being believed by him to be) ill, even permanently ill, but not disabled, there is no violation.

*Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051, 1053 (7th Cir. 1997) (citation omitted); *accord Carpenter v. Wal-Mart Stores, Inc.*, 614 F. Supp. 2d 745, 764 (W.D. La. 2008) ("A medical condition is not necessarily an impairment, and an impairment is not necessarily a substantial limitation on a major life activity so as to be a disability within the meaning of the ADA.").

Kriman's allegations fail to raise an inference of disability under this standard.

And, so, the Court should dismiss his ADA discrimination claim – included in cause "A" – without prejudice.

### 2. Race or National Origin

As to Kriman's Title VII and Chapter 21 "accent" discrimination claims, the undersigned analyzes them together. *See Khalfani v. Balfour Beatty Cmtys., L.L.C.*, 595 F. App'x 363, 365 n.1 (5th Cir. 2014) (per curiam) ("The legal framework governing claims under [Chapter 21] is the same for claims brought under Title VII." (citations omitted)); *see also* TEX. LAB. CODE § 21.001(1) (observing that the first "general purpose[ ] of this chapter" is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments").

"Title VII's disparate-treatment provision bars employers from intentionally discriminating against their employees on the basis of race, color, religion, sex, or national origin." *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 308 (2025) (citing 42 U.S.C. § 2000e-2(a)(1)).

When a court applies Rule 12(b)(6)'s standards to a Title VII claim, the complaint "need not contain specific facts establishing a prima facie case of discrimination under the framework set forth … in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 322, 336 (5th Cir. 2023) (cleaned up); *accord Hamilton v. Dall. Cnty.*, 79 F.4th 494, 502 n.45 (5th Cir. 2023) (en banc).

"But a plaintiff is still required to plead sufficient facts *on all of the ultimate elements* of [each] claim." *Norsworthy*, 70 F.4th at 336 (cleaned up; emphasis in

original).

At this stage, "a plaintiff must plead two 'ultimate elements' in order 'to support a disparate treatment claim …: (1) an "adverse employment action," (2) taken against a plaintiff "*because of* [a] protected status."'" *Thomas v. Dall. Indep. Sch. Dist.*, No. 23-10882, 2024 WL 2874376, at *4 (5th Cir. June 7, 2024) (quoting *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019); emphasis in *Cicalese*).

That is,

> [a] complaint need not allege each prong of the *prima facie* test for disparate treatment in order to overcome a Rule 12(b)(6) motion; to support a disparate treatment claim under Title VII, though, it must plausibly set out facts that the defendant took the adverse employment action against a plaintiff *because of* [a] protected status. [Accordingly, a] plaintiff must allege facts, direct or circumstantial, that would suggest [the employer's] actions were based on [the plaintiff's protected status] or that [the employer] treated similarly situated employees [not of the plaintiff's protected status] more favorably.

*Sanchez v. Chevron N. Am. Exploration & Prod. Co.*, No. 20-30783, 2021 WL 5513509, at *5 (5th Cir. Nov. 24, 2021) (per curiam) (cleaned up; emphasis in original).

Kriman alleges that "Defendants discriminated against [him] on the basis of age and accent." Dkt. No. 15. Although Title VII and Chapter 21 do not, by their terms, prohibit "accent" discrimination, "[c]ourts have characterized similar allegations as race or national origin discrimination." *Tran v. Hous. Housing Auth. Corp.*, No. 4:25-cv-149, 2025 WL 3906503, at *3 (S.D. Tex. Dec. 19, 2025) (collecting cases), *rec. adopted.*, 2026 WL 67165 (S.D. Tex. Jan. 8, 2026).

As stated above, "constructive termination" can be an adverse employment action for purposes of Title VII or Chapter 21. *See Gonzalez*, 899 F. Supp. 2d at 638;

- 10 -

Dkt. No. 15 at 6. Defendants' conclusory argument that Kriman "fails to plead any facts showing that he suffered an adverse employment action" disregards Kriman's allegations regarding constructive termination.

As to causation, Kriman alleges that Defendants "made accent comments toward" him. Dkt. No. 15 at 9. And he alleges that, after his termination, Defendants "posted an ad for [his] previous position stating 'English Skills' needed and upgraded [the] role to 'manager.' *Id*. Defendants have similarly failed to engage with Kriman's allegations regarding the new "English Skills" requirement and upgraded role. And, so, they have failed to persuade the undersigned that, taken together, these allegations are not circumstantial facts tending to show a causal connection between Kriman's race or national origin and his termination. *Cf. Medina v. Rocky Mountain Health Care Corp.*, 221 F.3d 1352, 2000 WL 963164, at \*5 (10th Cir. 2000) (finding that job being upgraded after plaintiff was terminated did not show pretext because "there [was] evidence that the job was in a state of reorganization even before [plaintiff] was terminated").

And, so, the Court should not dismiss Kriman's race or national origin discrimination claims – included in cause "A" – at this time.

3. Age

Kriman also attempts to raise a claim of age discrimination, complaining that "many younger employees were given opportunities while older employees were not, but instead hired as 'consultants' of something." Dkt. No. 15 at 5.

Although Kriman does not cite to it, the Age Discrimination and Employment

Act ("ADEA"), along with its Chapter 21 analog, prohibits discrimination by employers on the basis of age. *See Hester v. Williamson Cnty., Tex.*, No. A-12-cv-190-LY, 2013 WL 4482918, at *3 n.1 (W.D. Tex. Aug. 21, 2013) ("Because the language of Chapter 21 … closely mirrors the language of the … ADEA, the Court addresses [the] claims under these statutes collectively." (collecting cases)). "The prima facia elements of a cause of action for violation of the ADEA are, the plaintiff: 1) is within the protected class; 2) is qualified for the position; 3) suffered an adverse employment decision; and 4) was replaced by someone younger or treated less favorably than similarly situated younger employees." *Saunders v. Hous. Foam Plastics*, No. SA-23-cv-156-XR, 2023 WL 3313118, at *5 (W.D. Tex. May 5, 2023) (citing *Leal v. McHugh*, 731 F.3d 405, 410-11 (5th Cir. 2013)).

Kriman alleges that he "was passed over for promotions, although plenty of Office Depot employees are younger and with less academic and work experience qualifications who are promoted to managerial and executive roles." Dkt. No. 15 at 34. But this general comparison is not enough to plausibly plead age discrimination under the ADEA, which requires "an employee [to] proffer a comparator who was treated more favorably 'under nearly identical circumstances," which is satisfied when 'the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.'" *Reyna v. Donley*, 479 F. App'x 609, 611-12 (5th Cir. 2012) (per curiam) (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)); *accord Barfield v. Fed. Express Corp.*, 351 F. Supp. 3d 1041,

1054-55 (S.D. Tex. 2019) (applying *Lee* to an ADEA claim).

And, so, the Court should dismiss Kriman's age discrimination claim – included in cause "A" – without prejudice.

## B. Failure to Stop Retaliation, Constructive Termination, and Termination During EEOC Investigation

Kriman attempts to plead claims for "failure to stop retaliation" under Chapter 21, "constructive termination" under Texas common law, and "termination during EEOC investigation." Dkt. No. 15 at 10.

Defendants contend that these are not cognizable causes of action. *See* Dkt. No. 21 at 15.

The undersigned agrees.

As explained above, though a *pro se* complaint is construed liberally, this "does not require that the Court ... create causes of action where there are none." *Smith*, 2013 WL 2291886, at *8.

"Failure to stop retaliation" is not proscribed by Chapter 21. *See* TEX. LAB. CODE § 21.051-061. Rather, Chapter 21 prohibits "retaliation." *See id.* § 21.055. Indeed, Kriman's "failure to stop retaliation claim" alleges, and is based on, "retaliatory conduct." Dkt. No. 15 at 10. And Kriman has already raised a retaliation claim. *See id.* at 9-10.

And "constructive termination" under Texas common law is not a standalone employment cause of action. But constructive discharge may be an adverse employment action under Title VII for purposes of a discrimination or retaliation claim. *See Gonzalez v. Smith Intern., Inc.*, 899 F. Supp. 2d 622, 638 (S.D. Tex. 2010).

Similarly, "termination during EEOC investigation" is not a standalone cause of action. Rather, being terminated after filing an EEOC charge can support a retaliation claim. *See Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286, 295 (5th Cir. 2025) ("The filing of an EEOC charge constitutes protected activity" for a Title VII retaliation claim. (citations omitted)).

Insofar as Kriman's allegations for these three claims support a cause of action for retaliation or discrimination, Kriman has separately pleaded those claims. *See* Dkt. No. 15 at 9. And, so, his "failure to stop retaliation," "constructive termination," and "termination during EEOC investigation" claims are, at best, redundant.

The Court should dismiss these claims – listed as causes "C," "D", and "E" – with prejudice.

## C. Failure to Pay Paid Time Off

Kriman raises a claim under the Texas Labor Code based on Defendants' failure to pay him for paid time off. *See* Dkt. No. 15 at 11-12.

The undersigned cannot find that Kriman has pleaded a viable claim. Not only does Kriman not attempt to identify which provision of the Texas Labor Code, if any, gives rise to this cause of action, he also does not provide enough facts for the undersigned to infer a cause of action. *See Moore v. Wireless CCTV LLC*, No. H-25-5476, 2026 WL 1130370, at *8 (S.D. Tex. Apr. 27, 2026).

Again, the Court should not "create causes of action where there are none." *Smith*, 2013 WL 2291886, at *8.

And, so, the Court should dismiss this claim – listed as cause "J" – with

prejudice.

### D. Intentional Infliction of Emotional Distress

Kriman's intentional infliction of emotional distress ("IIED") claim should be dismissed.

"In *Hoffman-LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2008), the Texas Supreme Court reiterated that the tort claim of intentional infliction of emotional distress was originally recognized to be a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Tillison v. Trinity Valley Elec. Co-op, Inc.*, No. 3:25-cv-2480-D, 2005 WL 292423, at *2 (N.D. Tex. Feb. 7, 2005) (quoting *id.* at 447).

"The Texas Supreme Court further elaborated that '[i]f the gravamen of a plaintiff's complaint is the type of wrong that [a] statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction [of emotional distress] claim regardless of whether he or she succeeds on, or even makes, a statutory claim." *Howe v. Yellowbook, USA*, 840 F. Supp. 2d 970, 979 (N.D. Tex. 2011) (quoting *Hoffman-LaRoche*, 144 S.W.3d at 447).

Defendants move to dismiss Kriman's IIED because the basis of the claim is already covered by Chapter 21. *See* Dkt. No. 21 at 17.

> Chapter 21 "is a comprehensive fair employment practices act and remedial scheme … that provides the framework for employment discrimination claims in Texas." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 503 (Tex. 2012). It provides [the] exclusive remedy

> under state law for certain causes of action related to employment discrimination. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 808 (Tex. 2010). Accordingly, Chapter 21 preempts common law claims when the gravamen of those causes of action is the same as a complaint for discrimination or retaliation covered within its comprehensive statutory framework. *Waffle House*, 313 S.W.3d at 813.
>
> Chapter 21's preclusive effect applies even if [the plaintiff] chose not to assert a claim under Chapter 21. *See Wiggins v. St. Luke's Episcopal Health Sys.*, 517 F. App'x 249, 252 (5th Cir. 2013) (holding Chapter 21 preempted common law tort claims "regardless of whether the plaintiff brings an action under the Act"). Thus, if the essence of the plaintiff's case is a claim covered by Chapter 21, the plaintiff cannot bring it unless there are additional facts unrelated to a Chapter 21 claim that would support them. *See Waffle House*, 313 S.W.3d at 808-09; *Hoffmann-La Roche*, 144 S.W.3d at 447 (Tex. 2004).

*Grant v. Amazon.com Servs. LLC*, No. 3:24-cv-2311-X-BW, 2025 WL 1886766, at *7 (N.D. Tex. June 18, 2025) (cleaned up), *rec. adopted*, 2025 WL 1885653 (N.D. Tex. July 7, 2025).

Kriman's Complaint, by its own terms, links the intentional infliction of emotional distress claim to retaliation. *See* Dkt. No. 15 at 12. But Kriman has already raised a Chapter 21 retaliation claim. *See id.* at 9.

More specifically, Kriman alleges that his IIED claim arises out of "extreme abuse" such as "micromanagement, training overload, and separation from the team." *Id.* at 12. But Kriman also references micromanagement, excessive online training, and separation in support of his retaliation claim. *See, e.g., id.* at 16, 18, 34; Dkt. No. 15-1 at 5.

Because the gravamen of Kriman's IIED is retaliation by Defendants, the undersigned finds that the IIED claim is preempted by Chapter 21. *See Mott v. Schneider Elec. Sys, USA, Inc.*, No. 4:24-cv-3084, 2025 WL 1549461, at *3 (S.D. Tex.

May 30, 2025) (IIED claim preempted by Chapter 21 where plaintiff alleged that defendant "maliciously and intentionally inflicted emotional distress on [plaintiff] when [defendants] acted with malice and intentionally, motivated by retaliation, and/or recklessly proximately caus[ed] severe emotional distress to" plaintiff); *Gibbins v. Hologic, Inc.*, No. 1:25-cv-531-RP-DH, 2025 WL 4100442, at *4 (W.D. Tex. Dec. 3, 2025) (IIED claim preempted by Chapter 21 where "the factual allegations underpinning [plaintiff's] IIED claim [were] the same as those supporting the negligence-based claims" related to "sexual harassment and discrimination while employed [by defendant]"); *Ford v. Pangea Int'l Trading Co.*, No. H-25-916, 2025 WL 2977978, at *5 (S.D. Tex. Oct. 21, 2025) (IIED claim preempted where plaintiff alleged that "he was (1) unjustifiably subjected to drug testing, (2) was assigned additional responsibilities without equitable compensation, (3) was denied opportunities for advancement, and (4) was subject to a racially hostile work environment").

The Court should dismiss the IIED claim – listed as cause "H" – with prejudice.

### E. Defamation

Defendants also move to dismiss Kriman's defamation claim as preempted by Chapter 21. *See* Dkt. No. 21 at 18.

Kriman alleges that Defendants "made false, defamatory written statements about Plaintiff post-employment with actual malice, causing reputation and economic harm." Dkt. No. 15 at 12; *see id.* at 112.

He also references post-termination acts by Defendants in relation to his retaliation and discrimination claims. For instance, he alleges that, less than 30 days

after firing him, Defendants "posted a role to replace to him, but with a manager job title that demanded English skills." 15-1 at 81.

But, as the basis of his defamation claim, Kriman alleges that Defendants misrepresented the amount of time he worked for them after he was terminated. *See* Dkt. No. 15 at 112 ("Malicious Intentional Defamation Libel – After termination, Office Depot has been reporting that I worked for them from 7/2020 until 12/2021. … My dates of employment were 7/2020 until 10/2023 (almost 3.5 years, not 17 months.)" (cleaned up)). Not only are these allegations distinct from his other post-termination allegations, they are also unrelated to any Chapter 21 claims.

And, so, the undersigned cannot find that his defamation claim is preempted by Chapter 21. *See Mott*, 2025 WL 1549461, at *3 (defamation claim not preempted by Chapter 21 because plaintiff's allegations with respect to defamation claim were "separate from any retaliation or harassment claim under Chapter 21").

And the undersigned will assess the sufficiency of Kriman's defamation allegations.

Under Texas Law, the elements of a defamation claim are "(1) publication of a false statement of fact to a third party, (2) the statement must concern the plaintiff and be defamatory, (3) the publication must be made with the requisite degree of fault, and (4) the publication must cause damages." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 743 (5th Cir. 2019) (citing *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)).

Defamation may occur through either libel or slander. *See Dall. Morning News,*

*Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018). An action for libel requires the publication of a defamatory statement about the plaintiff to a third party in written or other graphic form, *see* TEX. CIV. PRAC. & REM. CODE § 73.001, while slander is defamation in oral form that is likewise published to a third party*, Tatum*, 554 S.W.3d at 623-24.

Libel or slander, the threshold question in a case alleging defamation is "whether the words used 'are reasonably capable of a defamatory meaning." *Id.* at 624 (citing *Musser v. Smith Prot. Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987)).

"A statement is defamatory if the words tend to injure the plaintiff's reputation, exposing him to hatred, contempt, ridicule, or financial injury, or if it tends to impeach the person's honesty, integrity, or virtue." *Hoskins v. Fuchs*, 517 S.W.3d 834, 840 (Tex. App. – Fort Worth 2016, pet. denied) (citing TEX. CIV. PRAC. & REM. CODE § 73.001). And "[t]o qualify as defamatory," "a statement should be derogatory, degrading, somewhat shocking, and contain elements of disgrace. But a communication that is merely unflattering, abusive, annoying, irksome, or embarrassing, or that only hurts the plaintiff's feelings, is not actionable." *Id.* (citing *Better Bus. Bureau of Metro. Hou., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 356 (Tex. App. – Houston [1st Dist.] 2013, pet. denied)).

Whether a statement is defamatory is a question of law. *See Hill v. Optum*, No. 2:17-cv-775-D, 2017 WL 2378299, at *3 (N.D. Tex. June 1, 2017). So the plaintiff must give the "specific nature of what was said," as well as the substance of the false statement so that the court may examine its connotation. *Id.*

The status of the person allegedly defamed determines the requisite degree of fault. A private individual need only prove negligence, whereas a public figure or official must prove actual malice. *See Lipsky*, 460 S.W.3d at 593. Neither Kriman nor Defendants claim that Defendants are public figures.

Here, Kriman alleges that Defendants "[r]eport[ed] 17 months tenure instead of 39." Dkt. No. 15. In support of his claim, Kriman provides a "screenshot provided by a potential employer." *Id.* at 112. The screenshot appears to show December 2021 as the end date of his employment with Office Depot. *See id.* The screenshot also says that the information was current as of December 2021. *See id.*

Such allegations do not rise to the level of defamation. The alleged misrepresentations regarding Kriman's tenure with Office Depot are not derogatory, disgraceful, or shocking, and Kriman has not alleged any reputational harm associated with the misrepresentation.

In fact, Kriman has not sufficiently alleged that he suffered any injury from these misrepresentations. He states, "Who knows how many job opportunities I have lost because of this," but this statement is merely speculative. *Id.*

And, so, Kriman has not alleged a plausible defamation claim. *See Callins v. Swift Transp. Co. of Ariz., LLC*, No. 3:17-cv-1975-C-BN, 2018 WL 4290790, at *6 (N.D. Tex. Feb. 28, 2018) ("Quite simply, Callins's defamation claim would not 'survive a motion to dismiss' under *Twombly* and *Iqbal* because she has failed to 'plead facts sufficient to show' that the defamation claim has 'substantive plausibility' by stating 'simply, concisely, and directly events' that support such a claim –

fundamentally, what was said." (quoting *Johnson*, 574 U.S. at 12)); *rec. adopted*, 2018 WL 4283555 (N.D. Tex. Sept. 7, 2018).

The Court should dismiss Kriman's defamation claim – listed as cause "F" – without prejudice.

## F. Breach of Contract

Kriman alleges that Defendants breached an implied contract because they "hyped [him] up as executive material, then terminated him." Dkt. No. 15.

But, beyond this vague allegation, Kriman provides no facts to support the elements of a breach of contract claim. *See Smith v. Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) ("In Texas, [t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." (cleaned up)).

Nor does Kriman allege that he was anything other than an at-will Texas employee or that, as an at-will employee, he "was fired for failing to commit an illegal act." *Armstrong v. Boehringer Ingelheim Pharm., Inc.*, No. 3:08-cv-1458-O, 2010 WL 2540751, at *21 (N.D. Tex. June 21, 2010) ("As for wrongful discharge, it is black letter law in Texas that the sole basis for such a claim is that common law exception to at-will employment law under which a case lies where the employee was fired for failing to commit an illegal act.") (citing *Sabine Polit Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985); citations and footnote omitted); *accord Sawyer v. E.I. Du Pont de Nemours & Co.*, 430 S.W.3d 396, 399 (Tex. 2014) ("Texas courts have created only

one" exception to the at-will doctrine: "prohibiting an employee from being discharged for refusing to perform an illegal act.").

And, so, the Court should dismiss the breach of contract claim – listed as cause "G" – with prejudice.

## G. Fraudulent Misrepresentation

"The elements of a fraudulent misrepresentation claim are: '(1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant (a) knew the representation was false, or (b) made the representation recklessly, as a positive assertion, and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) plaintiff actually and justifiably relied on the representation; and (7) the representation caused the plaintiff injury.'" *Howe*, 840 F. Supp. 2d at 981 (quoting *Lane v. Haliburton*, 529 F.3d 548, 564 (5th Cir. 2008) (quoting, in turn, *In Re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001))).

As to his fraudulent misrepresentation claim, Kriman alleges that he "was hired as an analyst and pushed to the backend coding." Dkt. No. 15 at 12.

Even taking into account the other facts in his 200-page Complaint, Kriman's allegations do not meet the requirements of Federal Rule of Civil Procedure 9(b), which

> imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud. At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the

identity of the person making the misrepresentation and what he obtained thereby – "the 'who, what, when, where, and how' of the fraud."

*Choe v. Bank of America, N.A.*, No. 3:13-cv-120-D, 2013 WL 6159308, at *4 (N.D. Tex. Nov. 25, 2013) (quoting *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (cleaned up)); *see also Lee v. Samsung Elecs. Am., Inc.*, 717 F. Supp. 3d 585, 591 (S.D. Tex. 2024) ("[T]he requirement of particularity in fraud pleadings is meant to provide defendants with fair notice of the claims, protect defendants from harm to reputation and goodwill arising from speculative pleadings, and preclude plaintiffs from bringing suit as a pretext for discovery in order to discover whether any fraud actually occurred." (quoting *Stevens v. Ford Motor Co.*, No. 2:18-cv-456, 2020 WL 12573279, at *4 (S.D. Tex. Nov. 2, 2020) (cleaned up))).

Kriman does not, for instance, allege that the representation that he was being hired as an analyst was false, nor does he allege Defendants intended Kriman to act on the representation.

And, so, the Court should dismiss the fraudulent misrepresentation claim – listed as cause "I" – without prejudice.

## II.    **Kriman's Motions for Leave to Amend**

Because Kriman has filed a Motion for Leave to File Amended Complaint [Dkt. No. 36], the Court should deny his prior three motions for leave [Dkt. Nos. 23, 24, & 29] as moot.

As to the remaining motion, *see* Dkt. No. 36, Kriman seeks leave to file a 149-page complaint that, like the operative Complaint, consists of factual allegations that are scattered amongst pleadings, charts, tables, and PowerPoints, *see* Dkt. No. 36-1.

Pleading in this manner is the "oppo[site of] the 'short and plain statement' requirement contemplated by Rule 8." *Roe v. Johnson Cnty., Tex.*, No. 3:18-cv-2497-B-BN, 2019 WL 5031357, at \*5 (N.D. Tex. July 29, 2019) (citations omitted), *rec. adopted*, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019). And doing so makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

And, so, leave to amend should be denied to the extent that Kriman seeks to file his 149-page complaint. *See Roe*, 2019 WL 5031357, at \*5 ("Shotgun pleadings are subject to dismissal under Rule 12(b)(6), particularly where – as shown by the multiplicity of claims here – 'the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick.'" (quoting *S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986))); *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1325 (11th Cir. 2015) ("[A] dismissal under Rules 8(a) and 10(b) is appropriate where" the claims "are so poorly pleaded that" "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." (quoting *Anderson*, 77 F.3d at 366)).

The Court should deny Kriman's Motion for Leave to File Amended Complaint [Dkt. No. 36] and, instead, grant Kriman leave to file a complaint that conforms with this recommendation and the "short and plain statement" requirement of Rule 8.

### Recommendation

For the reasons set out above, the Court should deny Plaintiff Alexandro

Kriman's Notice of Filing Supplement to Amended Petition [Dkt. No. 23], Amended Motion for Leave to File Supplement to Amended Petition [Dkt. No. 24], Motion for Leave to File Supplemental Clarification Regarding the Amended Petition and Supplement [Dkt. No. 29], and Motion for Leave to File Amended Complaint [Dkt. No. 36].

And the Court should grant in part and deny in part Defendant Office Depot LLC and Defendant Veyer LLC's Partial Rule 12(b)(6) Motion to Dismiss [Dkt. No. 20]. The Court should dismiss Kriman's failure to stop retaliation, constructive termination, termination during EEOC investigation, failure to pay paid time off, intentional infliction of emotional distress, and breach of contract claims with prejudice. It should dismiss Kriman's disability discrimination, age discrimination, defamation, and fraudulent misrepresentation claims without prejudice. And it should grant Kriman leave to file an amended complaint that conforms with this recommendation by a reasonable deadline to be set by the Court.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except on grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 24, 2026

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE